## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

SHARON LAVY,                              )
                                          )
     PLAINTIFF,             )
                                          )
v.                                        )    **JURY TRIAL DEMANDED**
                                          )
DELTA AIR LINES, INC.,                    )    Civil Action Case No. 1:24-cv-8792
                                          )
     DEFENDANT.             )
                                          )
                                          )

## COMPLAINT FOR DAMAGES AND JURY DEMAND

Sharon Lavy ("Plaintiff"), for her complaint against Delta Air Lines, Inc. ("Delta" or "Defendant"), alleges as follows:

## PARTIES

1.     Plaintiff is an employee of Defendant residing in Clark County, Nevada.

2.     Delta is a publicly owned corporation organized under the laws of the state of Delaware and has its principal place of business at 1030 Delta Boulevard, Atlanta, Georgia 30354, employing over 100,000 employees. Delta transacted and continues to transact business in New York and within Queens County by employing persons at John F. Kennedy International Airport ("JFK") and LaGuardia Airport and conducting business within Queens County, New York. Delta has at all relevant times been an "employer" covered by Title VII, the NYSHRL, the NYCHRL, and the NYLL.

## JURISDICTION & VENUE

3.     Jurisdiction is founded upon 28 U.S.C. § 1331 and principles of supplemental jurisdiction under 28 U.S.C. §1367.

1

4.    Plaintiff filed a Charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Right to Sue letter dated September 26, 2024. Accordingly, Plaintiff is required to file Title VII claims by December 25, 2024, and this lawsuit is indisputably timely.

5.    Plaintiff did not file with the New York State Division or City Commission, and accordingly jurisdiction for NYCHRL claims rests with this Court pursuant to the New York City Admin. Code §8-502(a).

6.    Within ten (10) days of commencing this lawsuit, Plaintiff shall serve true and correct copies of this Complaint upon designated representatives for the New York City Commission on Human Rights and Corporation Counsel pursuant to New York City Admin. Code §8-502(c).

7.    The New York City Human Rights Law claims herein were filed within three (3) years of the alleged unlawful discriminatory practice and/or harassment.

8.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because Defendant is subject to the court's personal jurisdiction within the Eastern District of New York with respect to this action.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

9.    Plaintiff has herein alleged claims of discrimination and retaliation with the EEOC.

10.    Plaintiff received notice of her right to sue from the EEOC regarding her complaints of discrimination/retaliation for the alleged Title VII claims herein within ninety (90) days of the filing of this Complaint.

## NATURE OF ACTION

11.     At all times relevant hereto, Plaintiff performed the duties of her employment in a satisfactory manner.

12.     Upon information and belief, Defendant has engaged in a pattern of intentionally discriminating and retaliating against ethnically Jewish, Hebrew and/or Israeli employees based upon their race and ancestry, including Plaintiff.

13.     Upon information and belief, at all pertinent times, Defendant acted or failed to act by and through its duly authorized agents, servants, representatives, partners, manager, supervisors and employees, who conducted themselves within the scope and course of their employment, with intentional malice and/or with reckless disregard to Plaintiff' federal, state, and New York City statutory rights.

## THE FACTS

### Background

14.     Plaintiff is a flight attendant of Jewish and ethnic Israeli background.

15.     Plaintiff has over three decades of experience in the airline industry and has worked for Delta for over eighteen years.

16.     Throughout Plaintiff's tenure with Defendant, she has earned an excellent reputation among her colleagues as a respected leader and a highly respected member of the New York Delta base.  In addition, Plaintiff has often been sought by Defendant for her sound advice and counsel related to the enhancement of inflight service on the Tel Aviv - JFK route.

17.     Plaintiff is employed by Delta Air Lines as a purser, a position in which she is responsible for overseeing the management of the entire cabin, including ensuring that all safety and service procedures are followed.

18. Plaintiff is also employed by Delta as a Hebrew Language of Destination (LOD) flight attendant on the Tel Aviv – JFK route. As part of her duties as an LOD flight attendant, Plaintiff is required to make necessary announcements in Hebrew, assist Hebrew-speaking passengers by translating, and engage with them as part of providing good customer service. Nonetheless, Plaintiff and some of her colleagues have been periodically criticized by some pursers for taking the time to engage with Hebrew-speaking passengers despite the fact that such interactions are an integral part of their jobs as Hebrew LOD flight attendants.

19. Shortly after Plaintiff informed Defendant of her colleagues' antisemitic conduct, Defendant commenced a retaliatory course of action, which included the fabrication of blatantly false complaints from supposed passengers and colleagues, the unjust revocation of her purser status, and the inclusion of unfounded allegations in her personnel record.

## Plaintiff Reported Anti-Semitism

20. On or about November 10, 2022, Plaintiff sent an email to Defendant in which she reported that she has often observed Delta crew members mistreating Jewish passengers during flights. Plaintiff implored Defendant to implement training practices to avoid future reoccurrences of antisemitism. Defendant never provided Plaintiff with any sort of response, via email or otherwise.

21. On or about January 27, 2023, Plaintiff, on behalf of herself and Roey Segev, another Israeli flight attendant that regularly served as an LOD flight attendant on the Tel Aviv-JFK route, sent an email to Delta's New York City base management team. Plaintiff reported that there had been multiple incidents in which other crew members had exhibited derogatory and antisemitic behavior towards her, Mr. Segev, and Jewish passengers. Specifically, the email highlighted that the purser responsible for managing the cabin on a round-trip flight from JFK to

Tel Aviv on or about January 13, 2023 and from Tel Aviv to JFK on or about January 15, 2023 ("Purser A"), was demonstrably antisemitic to Plaintiff, Mr. Segev and Jewish and passengers.

22.     More specifically, Plaintiff reported that Purser A was rude and abrupt with Jewish and Israeli passengers and that the passengers complained to Plaintiff and Mr. Segev in Hebrew that Purser A was extremely "cut and dry" and unfriendly with them.

23.     In addition, Plaintiff reported that Purser A referred to Jewish and Israeli passengers as "your people" while describing an incident involving a Jewish passenger to Plaintiff and Mr. Segev.

24.     The Plaintiff additionally reported that Purser A criticized her and Mr. Segev for "wasting time" by engaging with Hebrew-speaking passengers, instead of prioritizing fast cabin service despite the fact that he was well aware that Delta requires flight attendants in their capacity as Hebrew LODs to take time to engage with Hebrew-speaking passengers.

25.     Plaintiff also explained that Purser A had retaliated against her and Mr. Segev for taking the time to communicate with passengers in Hebrew.  Specifically, Purser A denied them the opportunity to take their scheduled break together, in violation of established seniority procedures.  This denial was inconsistent with the break schedule initially set, which both Plaintiff and Mr. Segev had previously requested, and which had been granted without issue in the past.

26.     Plaintiff reported that when she and Mr. Segev asked Purser A why they were suddenly not permitted to take their break together, Purser A curtly replied, "because I said so" without providing any kind of reasonable explanation.

27.     In this same email that Plaintiff and Mr. Segev sent to the New York City base management team on or about January 27, 2023, Plaintiff reported another antisemitic incident that occurred on another flight from JFK to Tel Aviv in which the main cabin customer service

coordinator purser ("Purser B"), yelled and became hysterical with Plaintiff and Mr. Segev. Plaintiff explained that Purser B was angry that she and Mr. Segev did not assist her continuously with tasks despite the fact that such tasks were Purser B's responsibility. Plaintiff observed that Purser B needed substantial assistance and did not understand the requirements of her role. Although Plaintiff and Mr. Segev made reasonable efforts to assist Purser B, they had a duty to prioritize their own responsibilities, including attending to the needs of passengers, particularly those who did not speak English. As a result, Plaintiff and Mr. Segev were unable to provide the level of assistance requested by Purser B, whose demands were constant. In response, Purser B became hysterical and yelled at both Plaintiff and Mr. Segev.

28. Plaintiff further reported that on the return flight from Tel Aviv to JFK, Purser B persisted with her hysterical yelling, this time directed at a different Israeli colleague responsible for catering.

29. Upon information and belief, Purser B did not yell at any members of the crew or at passengers that were not Jewish, demanded that only her Jewish colleagues shirk their own responsibilities to assist her, and proceeded to shout at them when they refused.

30. Defendant never provided Plaintiff and Mr. Segev with any sort of response, via email or otherwise, regarding their concerns and complaints about Purser A and Purser B's antisemitic treatment.

31. As detailed below, Defendant's treatment of Plaintiff then underwent a marked and abrupt shift following Plaintiff's email sent on behalf of herself and Mr. Segev on or about January 27, 2023, in which she reported incidents of antisemitic conduct. Prior to sending this email, Plaintiff had been consistently recognized as a top performer, with her superiors regularly acknowledging the high quality of her work and her collaborative efforts with management to

6

improve and enhance service on the route between Tel Aviv and JFK. It was only following Plaintiff's reports of anti-Semitism that Defendant began to engage in retaliatory actions against her.

**Plaintiff Reported That Defendant Violated Safety Protocols**

32.     On or about May 31, 2023, Plaintiff witnessed an unruly aggressive passenger physically assault a Jewish Israeli flight attendant, Barak Keisar, on Delta flight 235 from Tel Aviv to JFK. Plaintiff and Mr. Segev were left to attend to the violent passenger until landing. Upon landing at JFK, Plaintiff and the rest of the crew were met by base managers in the jetway. Several days later, in accordance with Delta's protocol of providing "support calls" after challenging in-flight incidents, Plaintiff's base manager contacted her. During this call, Plaintiff described the traumatic and distressing nature of the incident, explaining the extreme difficulty of being forced to contend with a physically violent passenger.

33.     Defendant has never provided Plaintiff with any explanation as to why it deviated from Delta and the FAA's rule and policy requiring that an emergency landing be made in situations where a passenger becomes unruly. Upon information belief, Delta has emergency landing when non-Jewish flight attendants were put in danger by unruly passengers.

**Defendant Began Retaliating Against Plaintiff Only After She Reported Defendant's Conduct**

34.     Beginning in or around March 2023, Defendant commenced a pattern of harassment and retaliation against Plaintiff, involving a series of unfounded and bizarre allegations regarding her in-flight conduct. Prior to this period, Plaintiff had never been subjected to any discipline or criticism concerning her job performance.

35.     On or about March 21, 2023, Sherwin Mason, Plaintiff's supervisor, requested that Plaintiff respond to unsubstantiated allegations regarding her conduct on an unspecified date and

flight. Specifically, Plaintiff was accused of using her cell phone in an unauthorized manner and of either kicking or tapping another flight attendant with her foot. Despite Plaintiff's request, Defendant refused to disclose the date or flight number related to the alleged incident. Plaintiff unequivocally denied both of the accusations.

36. Plaintiff was both embarrassed and confused by Defendant's request that she respond to such unfounded accusations, particularly in light of Plaintiff's extensive experience and exemplary reputation as a Delta flight attendant, during which time she had never received any complaints remotely resembling the allegations made by Defendant. Plaintiff reasonably believed that Defendant had intentionally fabricated these complaints to tarnish her reputation, and to intimidate and harass her in retaliation for her emails reporting antisemitic behavior by her colleagues. Plaintiff had reported such incidents in accordance with Defendant's established rules and procedures, which explicitly encourages employees to report discriminatory conduct by fellow employees.

37. On or about May 26, 2023, Plaintiff's supervisors, Valerie Jenkins and Mr. Mason, met with Plaintiff to address new and false allegations concerning Plaintiff's in-flight conduct, including claims that she had failed to make required passenger announcements and had eaten steak while simultaneously boarding passengers. Plaintiff denied both of the allegations. Plaintiff informed her supervisors that she was deeply upset by the accusations, and emphasized that even the least competent flight attendant would not have engaged in such unprofessional behavior. Plaintiff further asserted that these accusations were especially disconcerting because they directly contradicted Plaintiff's longstanding, well-established reputation for her courteous and welcoming attitude toward passengers. In addition, Plaintiff's distinctive style of in-flight announcements,

which was widely admired among her colleagues, had become a model that they often emulated in their own announcements.

38.     Notwithstanding Plaintiff's denial of the allegations and the lack of any investigation into such allegations, Ms. Jenkins and Mr. Mason informed Plaintiff that her purser qualifications would be revoked and that the accusations would be recorded in her personnel file. Ms. Jenkins and Mr. Mason further advised Plaintiff that she could discuss the matter further with her director, should she wish to do so.

39.     Plaintiff subsequently requested a meeting with her director, Andrea Misserian, to discuss her concerns regarding the multiple fabricated allegations that had been lodged against her. They agreed to meet on or about June 24, 2023.

40.     On or about June 24, 2023, Plaintiff met with Ms. Misserian and Ms. Anissa Khalaf, Senior Base Manager at Delta.  During the meeting, Plaintiff expressed her frustration and concern regarding the multiple baseless allegations that had been lodged against her, which had not only been included in her personnel file, but had also formed the basis for the revocation of her purser status.  Plaintiff highlighted that these actions were taken despite Defendant's failure to conduct any formal investigation into the allegations.

41.     Plaintiff categorically denied each of the allegations and requested the reinstatement of her purser status.  In response, both Ms. Misserian and Ms. Khalaf assured Plaintiff that the matter would be further investigated and that Plaintiff would be provided with an update within two weeks.

42.     On or about July 18, 2023, Plaintiff met with Mr. Mason and Ms. Khalaf, who conveyed the results of Defendant's investigation, which concluded that the allegations against Plaintiff were without merit.  Mr. Mason and Ms. Khalaf further assured Plaintiff that her purser

status would be promptly reinstated and that her personnel file would be cleared of any references to the disputed allegations. Upon information and belief, Defendant recognized that the revocation of Plaintiff's purser status would not stand up to even cursory scrutiny.

43. Nonetheless, the retaliation continued. On or about September 20, 2023, Ms. Jenkins presented Plaintiff with a letter purportedly written by a passenger who complained that Plaintiff had ignored his request for a cup of coffee and allegedly told the passenger to make his own. Plaintiff denied the allegation and expressed that she was deeply offended by the accusations because even the most incompetent flight attendant would not have engaged in such unprofessional conduct. Plaintiff requested specific identifying information related to the incident, including the flight number, the date of the flight, the passenger's seat number, and any other relevant details. Ms. Jenkins, however, refused to provide any such identifying information.

44. Plaintiff found it both noteworthy and telling that the alleged passenger complaint was lodged exclusively against her and Mr. Segev, the only Jewish flight attendants onboard. According to the fabricated complaint, Plaintiff and Mr. Segev were assigned to separate cabins. However, Plaintiff and Mr. Segev had actually always worked together in the same cabin. The complaint further claimed that the passenger first approached Plaintiff, stationed in first class, to request coffee, and that when Plaintiff allegedly refused and told the passenger to make it himself, the passenger then went to the back of the aircraft to ask Mr. Segev for some coffee, who similarly refused. The crew on the Tel Aviv - JFK route was consistently comprised of ten flight attendants responsible for serving passengers. Yet, according to the complaint, the passenger only approached Plaintiff and Mr. Segev for coffee, despite the fact that they were supposedly stationed at opposite ends of the aircraft. Given this alleged layout, it seemed highly improbable that the

passenger would have chosen to request coffee from one flight attendant at the front, another at the back, and conveniently bypassed the eight remaining attendants in between.

45.     Furthermore, this letter, allegedly authored by a passenger, contains terminology specific to the airline industry that, upon information and belief, is not typically used by the general public.  Notably, the letter references terms such as "lavatory" and "personal device," rather than the more commonly used "bathroom" and "cell phone."

46.     For all of the aforementioned reasons, Plaintiff reasonably inferred that Defendant fabricated the passenger complaint as part of a strategic ambush tactic.

47.     In addition to the supposed passenger complaint, Ms. Jenkins provided Plaintiff with a video that purportedly depicted Plaintiff on the flight in question, which was intended to substantiate the allegation that she had refused to prepare coffee for a passenger.  Plaintiff immediately observed that the video appeared to be digitally altered.  She noticed, for instance, that the video showed her on an Airbus A350 aircraft, which is a type of aircraft that Plaintiff has never serviced as a flight attendant.  The video appeared to be a composite, with Plaintiff's image superimposed onto a different aircraft backdrop.  Additionally, Plaintiff noticed the unnatural appearance of her hand, which appeared to have been manipulated through computer imaging.  Plaintiff denied that the video was authentic.

48.     On or about October 3, 2023, at Plaintiff and Mr. Segev's request, a meeting was convened between them and their director, Ms. Misserian, wherein Plaintiff and Mr. Segev conveyed their belief that one or more persons employed by Defendant was targeting them and manufacturing false allegations in retaliation for their reports of antisemitic conduct by their co-workers.

49.     During this meeting, Plaintiff informed Ms. Misserian that she had requested the meeting because she believed Delta was retaliating against her by fabricating false complaints, and she emphasized that she was seeking Ms. Misserian's intervention to address and halt any further such retaliation.  Plaintiff explained that she felt unsafe working in an environment in which she was being targeted for reporting discrimination in compliance with Defendant's policies.  Ms. Misserian acknowledged that it appeared that someone within Defendant's organization was indeed possibly attempting to frame Plaintiff and Mr. Segev.

50.     Upon information and belief, Defendant's egregious and baseless allegations were intended to tarnish Plaintiff's exemplary employment record and to fabricate a written justification for her eventual termination.

51.     Defendant's harassment and retaliation, which began only following Plaintiff's reports of antisemitic incidents by co-workers, have caused Plaintiff to request to work fewer hours to avoid further mistreatment, thereby causing economic damage as well as emotional distress resulting in insomnia, difficulty eating and excessive weight loss.

**Defendant Continues to Jeopardize the Safety and Security of its Jewish Employees by Knowingly Employing Hamas Supporters**

52.     On or about October 7, 2024, Hamas terrorists invaded Israel and killed the greatest number of Jews since the Holocaust.  Hamas brutally kidnapped over two hundred and fifty people in Israel and took them hostage in Gaza, committed mass rape and burned innocent civilians alive in Israel.

53.     On or about October 17, 2023, a Jewish Israeli flight attendant employed by Delta Airlines, acting on behalf of herself and forty-four other Jewish Israeli flight attendants, including Plaintiff (collectively, the "Signatories"), sent an email to Delta's management. The email expressed concerns regarding their safety, specifically citing the continued employment of four

flight attendants who had openly expressed hatred and animosity towards Israel on social media. These individuals demonstrated explicit support for Hamas and/or made derogatory statements about the state of Israel and its citizens.

54.　The email further highlighted that Hamas' charter explicitly calls for the destruction of the state of Israel and the eradication of Jews.　The Signatories conveyed their fear for their personal safety while working alongside individuals who were supporters of an organization that espouses such views.

55.　While the email did not explicitly reference Delta's written rules or policies, Defendant is fully aware that employees who publicly support Hamas—an entity designated by the U.S. Department of State as a Foreign Terrorist Organization—violate numerous company policies, including but not limited to Delta's social media and code of conduct policies.

56.　On or about February 20, 2024, Ms. Misserian communicated to the Signatories that their complaints had been investigated and that "appropriate action" had been taken based on the results of that investigation.　However, Ms. Misserian indicated that she could not disclose the specifics of the actions taken.

57.　At the time of this writing, each of the individuals that were reported for openly and proudly supporting Hamas, an entity designated by the United States Department of State as a Foreign Terrorist Organization,　remain employed by Defendant.

## FIRST CLAIM
### (Religion and National Origin Discrimination Arising Under Title VII)

58.　Plaintiff incorporates by reference the preceding paragraphs as if fully stated herein.

59.　This claim is premised upon Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e, et seq.

60.    At all relevant times, Plaintiff was an "employee" under Title VII, 42 U.S.C. §
2000e(f).

61.    Delta is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

62.    Delta has been engaged in and continues to engage in a pattern of discrimination
against Jewish, Hebrew-speaking Israeli employees.

63.    Delta has recently been the subject of litigation concerning its treatment of Jewish,
Hebrew-speaking Israeli employees, and is currently facing multiple additional complaints related
to similar discriminatory practices.

64.    Upon information and belief, Delta discriminated against Plaintiff when Delta, inter
alia, imposed disparate treatment, harassed, and otherwise treated Plaintiff unfavorably as
compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s),
manager(s), procedures and rules.

65.    Delta ignored and failed to respond to Plaintiff's reports of the antisemitic treatment
she endured from Purser A and Purser B.

66.    Upon information and belief, Delta has responded to complaints of discrimination
from Plaintiff's non-Jewish and non-Israeli counterparts.

67.    Delta left Plaintiff and another Jewish flight attendant to attend to an unruly
passenger and violated FAA regulations and its own policies and protocols by failing to divert the
aircraft to the nearest airport.

68.    Upon information and belief, Delta has diverted flights and made emergency
landings when non-Jewish and non-Israeli flight attendants were put in danger by unruly
passengers.

14

69. Delta knowingly employs Hamas supporters that openly call for the eradication of all Jews and the destruction of the state of Israel.

70. Upon information and belief, Delta does not knowingly employ any other individuals that call for the eradication of any other ethnic, racial or national group that Delta employs.

71. Defendant's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected New York State rights.

72. As a direct and proximate result of Defendant's actions, Plaintiff has suffered humiliation, inconvenience, mental distress, and embarrassment.

73. The psychological and emotional consequences of Defendant's actions continue to date, and, upon information and belief, will continue into the future.

## SECOND CLAIM
**(Discrimination Based on National Origin and Creed Arising Under New York Civil Rights Law)**

74. Plaintiff incorporates by reference all preceding paragraphs as if re-alleged and stated fully herein.

75. New York Civil Rights Law §40-c prohibits (i) discriminatory treatment based on, inter alia, national origin and creed in the exercise of a person's civil rights and (ii) the violation of a person's right to equal protection of the laws of New York State.

76. Plaintiff is a "person" for purposes of NY Exec § 292 (1) and an "employee" for purposes of . NY Exec § 292 (6)

77. Defendant is an "employer" for purposes of NY Exec § 292 (5).

78. Delta ignored and failed to respond to Plaintiff's reports of the antisemitic treatment she endured from Purser A and Purser B.

79.     Upon information and belief, Delta has responded to complaints of discrimination from Plaintiff's non-Jewish and non-Israeli counterparts.

80.     Delta left Plaintiff and another Jewish flight attendant to attend to an unruly passenger and violated FAA regulations and its own  policies and protocols by failing to divert the aircraft to the nearest airport.

81.     Upon information and belief, Delta has diverted flights and made emergency landings when non-Jewish and non-Israeli flight attendants were put in danger by unruly passengers.

82.     Delta knowingly employs Hamas supporters that openly call for the eradication of all Jews and the destruction of the state of Israel.

83.     Upon information and belief, Delta does not knowingly employ any other individuals that call for the eradication of any other ethnic, racial or national group that Delta employs.

84.     Defendant's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected New York State rights.

85.     As a direct and proximate result of Defendant's actions, Plaintiff suffered emotional distress, inconvenience, humiliation, and embarrassment.

86.     The psychological and emotional consequences of Defendant's actions continue to date, and, upon information and belief, will continue into the future.

### THIRD CLAIM
**(Discrimination Based on National Origin and Creed Arising Under New York Executive Law)**

87.     Plaintiff incorporates by reference all preceding paragraphs as if re-alleged and stated fully herein.

88.     This claim is premised upon New York Executive Law § 296, which prohibits employment discrimination and harassment based on, inter alia, a person's creed and national origin, including ancestry.

89.     Plaintiff is a "person" for purposes of NY Exec § 292 (1) and an "employee" for purposed of NY Exec § 292 (6) .

90.     Defendant is an "employer" for purposes of NY Exec § 292 (5).

91.     Delta ignored and failed to respond to Plaintiff's reports of the antisemitic treatment she endured from Purser A and Purser B.

92.     Upon information and belief, Delta has responded to complaints of discrimination from Plaintiff's non-Jewish and non-Israeli counterparts.

93.     Delta left Plaintiff and another Jewish flight attendant to attend to an unruly passenger and violated FAA regulations and its own  policies and protocols by failing to divert the aircraft to the nearest airport.

94.     Upon information and belief, Delta has diverted flights and made emergency landings when non-Jewish flight and non-Israeli attendants were put in danger by unruly passengers.

95.     Delta knowingly employs Hamas supporters that openly call for the eradication of all Jews and the destruction of the state of Israel.

96.     Upon information and belief, Delta does not knowingly employ any other individuals that call for the eradication of any other ethnic, racial or national group that Delta employs.

97.     Defendant's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected New York State rights.

98.     As a direct and proximate result of Defendant's actions, Plaintiff suffered emotional distress, inconvenience, humiliation, and embarrassment.

99.     The psychological and emotional consequences of Defendant's actions continue to date, and, upon information and belief, will continue into the future.

## FOURTH CLAIM
### (Discrimination Based on National Origin and Creed Arising Under New York City Human Rights Law)

100.     Plaintiff incorporates by reference all preceding paragraphs as if re-alleged and stated fully herein.

101.     New York City Human Rights Law, N.Y. City Admin. Code § 8-107 prohibits employment discrimination based on, inter alia, a person's creed and national origin, including their ancestry.

102.     Plaintiff is a "person" for purposes of the New York City Human Rights Law under New York City Administrative Code §8-102(1).

103.     Defendant is an "employer" for purposes of the New York City Human Rights Law under New York City Administrative Code § 8-102(5).

104.     Defendant's discriminatory and disparate treatment of Plaintiff because she is Jewish and Israeli created a hostile work environment in violation of the NYCHRL.

105.     Delta discriminated against, treated disparately, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, non-protected class coworkers subject to the same supervisor(s), manager(s), procedures and rules.

106.     Delta ignored and failed to respond to Plaintiff's reports of the antisemitic treatment she endured from Purser A and Purser B.

107.    Upon information and belief, Delta has responded to complaints of discrimination from Plaintiff's non-Jewish and non-Israeli counterparts.

108.    Delta left Plaintiff and another Jewish flight attendant to attend to an unruly passenger and violated FAA regulations and its own policies and protocols by failing to divert the aircraft to the nearest airport.

109.    Upon information and belief, Delta has diverted flights and made emergency landings when non-Jewish and non-Israeli flight attendants were put in danger by unruly passengers.

110.    Delta knowingly employs Hamas supporters that openly call for the eradication of all Jews and the destruction of the state of Israel.

111.    Upon information and belief, Delta does not knowingly employ any other individuals that call for the eradication of any other ethnic, racial or national group that Delta employs.

112.    Defendant's actions were undertaken either intentionally or with reckless disregard to Plaintiff's statutorily protected New York City rights.

113.    As a direct and proximate result of Defendant's actions, Plaintiff suffered economic damages, emotional distress, inconvenience, humiliation, and embarrassment. The economic, psychological and emotional consequences of Defendant's actions continue to date, and, upon information and belief, will continue into the future.

## FIFTH CLAIM
### (Retaliation for Protected Activity Arising Under Title VII)

114.    Plaintiff incorporates by reference all preceding paragraphs as if re-alleged and stated fully herein.

115. This claim is premised upon Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. § 2000e, which prohibits employers from taking materially adverse employment actions in response to an employee's participation in a protected activity, including but not limited to an employee's opposition to an action taken by its employer, which the employee considers to be discriminatory.

116. At all relevant times, Plaintiff was an "employee" under Title VII, 42 U.S.C. §2000e(f).

117. Delta is an "employer" under Title VII, 42 U.S.C. § 2000e(b).

118. Plaintiff opposed Delta's unlawful, discriminatory employment practices and engaged in protected activity under Title VII.

119. Defendant's retaliatory treatment of Plaintiff because of her protected activity in advancing her Title VII rights was in violation of, inter alia, Title VII, 42 U.S.C. § 2000e-3.

120. Delta discriminated and retaliated against, treated disparately, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, by, inter alia, fabricating complaints and initiating bad-faith investigations against Plaintiff in retaliation for her reports of antisemitic treatment during the course of her employment at Delta.

121. Delta's subjection of Plaintiff to such adverse and unfavorable employment actions in retaliation for her protected activity caused Plaintiff to fear working for Delta. Consequently, Plaintiff has reduced her bids to work on New York based Delta flights since the second time that Delta fabricated complaints against her in or around January 2023.

122. Defendant's actions were done intentionally or with reckless indifference to Plaintiff's federally protected Title VII rights.

123.     As a direct and proximate result of Defendant's intentional and/or reckless actions, Plaintiff suffered humiliation, inconvenience, mental distress, embarrassment, and economic damages.

124.     The psychological, emotional and economic consequences of the Defendant's actions continue to date, and, upon information and belief, will continue into the future.

## SIXTH CLAIM
### (Protected Activity Retaliation Arising Under the New York Executive Law)

125.     Plaintiff incorporates by reference all preceding paragraphs as if re-alleged and stated fully herein.

126.     New York Executive Law § 296 (1)(e) prohibits an employer from engaging in retaliation through discharging, expelling or otherwise discriminating against an employee in response to such employee's engagement in protected activity .

127.     Plaintiff is a "person" for purposed of NY Exec § 292 (1) and "employee" for purposes of § 292 (6).

128.     Defendant is an "employer" for purposes of NY Exec § 292 (5).

129.     Defendant's retaliatory treatment of Plaintiff because of her protected activity as an employee advancing her rights was in violation of, inter alia, New York Executive Law.

130.     Delta discriminated and retaliated against, treated disparately, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, by, inter alia, fabricating complaints and initiating bad-faith investigations against Plaintiff in retaliation for her reports of antisemitic treatment during the course of her employment at Delta.

131.     Delta's subjection of Plaintiff to such adverse and unfavorable employment actions in retaliation for her protected activity caused Plaintiff to fear working for Delta.  Consequently,

Plaintiff has reduced her bids to work on New York based Delta flights since the second time that Delta fabricated complaints against her in or around January 2023. Defendant's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected New York State rights.

132. As a direct and proximate result of Defendant's intentional and/or reckless actions, Plaintiff suffered economic damages, emotional distress, inconvenience, humiliation, and embarrassment.

133. The economic, psychological and emotional consequences of the Defendant's actions continue to date, and, upon information and belief, will continue into the future.

## SEVENTH CLAIM
**(Protected Activity Harassment Arising Under the New York Executive Law)**

134. Plaintiff incorporates by reference all preceding paragraphs as if re-alleged and stated fully herein.

135. New York Executive Law § 296 (1) (h) prohibits an employer from harassing an employee in response to such employee's engagement in protected activity .

136. Plaintiff is a "person" for purposes of NY Exec § 292 (1) and an "employee" for purposes of NY Exec § 292 (6).

137. Defendant is an "employer" for purposes of NY Exec § 292 (5).

138. Defendant's harassment of Plaintiff because of her protected activity as an employee advancing her rights was in violation of, inter alia, New York Executive Law.

139. Delta discriminated and retaliated against, treated disparately, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, by, inter alia, fabricating complaints and initiating bad-faith investigations against Plaintiff in retaliation for her reports of antisemitic treatment during the course of her employment at Delta.

140. Delta's subjection of Plaintiff to such harassment and unfavorable employment actions in retaliation for her protected activity caused Plaintiff to fear working for Delta. Consequently, Plaintiff has reduced her bids to work on New York based Delta flights since the second time that Delta fabricated complaints against her in or around January 2023.

141. Defendant's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected New York State rights.

142. As a direct and proximate result of Defendant's intentional and/or reckless actions, Plaintiff suffered economic damages, emotional distress, inconvenience, humiliation, and embarrassment.

143. The economic, psychological and emotional consequences of the Defendant's actions continue to date, and, upon information and belief, will continue into the future.

## EIGHTH CLAIM
### (Protected Activity Retaliation Arising Under the New York City Human Rights Law)

144. All preceding paragraphs are incorporated by reference as if fully stated herein.

145. New York City Human Rights Law, N.Y. City Admin. Code § 8-107(7), prohibits retaliation because of an employee's protected activity.

146. Plaintiff is a "person" for purposes of the New York City Human Rights Law under New York City Administrative Code §8-102(1).

147. Defendant is an "employer" for purposes of the New York City Human Rights Law under New York City Administrative Code § 8-102(5).

148. Defendant's retaliatory treatment of Plaintiff because of her protected activity as an employee advancing her NYCHRL rights was in violation of, inter alia, New York City Human Rights Law, § 8-107.

149. Delta discriminated and retaliated against, treated disparately, harassed, and otherwise treated Plaintiff unfavorably as compared to similarly situated, nonprotected class coworkers subject to the same supervisor(s), manager(s), procedures and rules, by, inter alia, retaliating against and harassing Plaintiff. Delta began to harass and retaliate against Plaintiff by lodging unfounded complaints against Plaintiff in response to her reports that Delta had engaged in antisemitism.

150. Delta's subjection of Plaintiff to such adverse employment actions in retaliation for her protected activity caused Plaintiff to fear working for Delta and consequently, Plaintiff has reduced her bids to work on New York based Delta flights since the second time that Delta fabricated complaints against her in or around January 2023.

151. Upon information and belief, Delta's actions were done intentionally or with reckless indifference to Plaintiff's statutorily protected New York City rights, entitling her to punitive damages under the New York City Human Rights Law.

152. As a direct and proximate result of Defendant's intentional and/or reckless actions, Plaintiff suffered humiliation, inconvenience, mental distress, and embarrassment.

153. The psychological, emotional and economic consequences of the Defendant's actions continue to date, and, upon information and belief, will continue into the future.

**NINTH CLAIM**
**(Whistleblower Retaliation Under New York Labor Law)**

154. All preceding paragraphs are incorporated by reference as if fully stated herein.

155. At all relevant times, Plaintiff was an "employee" under NYLL § 740 (a).

156. Delta is an "employer" under NYLL § 740 (b).

157. New York Labor Law prohibits retaliation because of an employee's engagement in protected whistleblower activities.

158. Delta violated N.Y. Labor Law, § 740 by retaliating against Plaintiff for disclosing information to a supervisor that Delta engaged in activities that Plaintiff reasonably believed were in violation of law, rule or regulation, which Plaintiff reasonably believed posed a substantial and specific danger to public health and safety.

159. Plaintiff reported to her supervisors that a Delta pilot failed to make an emergency landing when an unruly passenger posed a safety risk to those onboard and that if Delta continued to flagrantly violate such applicable regulations and procedures, it would endanger public safety again in the future.

160. Following Plaintiff's engagement in the above-mentioned whistleblower activities, Delta retaliated against Plaintiff by lodging completely unfounded complaints against her, which in turn caused Plaintiff to fear working for Delta.

161. As a direct and proximate result of Defendant's intentional and/or reckless actions, Plaintiff suffered emotional distress, inconvenience, humiliation, and embarrassment. The psychological, emotional and economic consequences of the Defendant's actions continue to date, and, upon information and belief, will continue into the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief against the Defendant:

1. Award compensatory damages in an amount to be determined at trial;

2. Award punitive damages in an amount to be determined at trial;

3. Disbursements, costs and attorneys' fees and

4. For such other further relief to this Court may seem just and proper.

ALL CONDITIONS PRECEDENT HAVE BEEN PERFORMED OR HAVE OCCURRED. PLAINTIFF DEMANDS TRIAL BY JURY

Dated: December 24, 2024

Respectfully submitted,

National Jewish Advocacy Center, Inc.

_/s/ Lauren Israelovitch_
Lauren Israelovitch
666 Harless Place
West Hempstead, NY 11552
Phone: (917) 495-5790
Email: lauren@njaclaw.org
*Attorneys for Plaintiff Sharon Lavy*